IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



ALLIANCE STORAGE TECHNOLOGIES, INC.,
      Plaintiff,

v.                                               Civil Action No. 4:11cv46

ENGSTROM, et al.,
      Defendants.

## OPINION AND ORDER

This matter is before the Court upon Alliance Storage Technologies, Inc.'s ("Plaintiff") Motion for Default Judgment and request for compensatory and punitive damages and injunctive relief. The Court held a hearing in this matter on December 13, 2011. Following the hearing Plaintiff provided the Court with additional information the Court had requested before issuing its opinion and order in this matter. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for default judgment, injunctive relief, compensatory damages, and attorneys' fees and costs. The Court **DENIES** Plaintiff's motion for punitive damages.

I.     **Procedural History**

On March 4, 2011, Plaintiff filed suit against defendants Archive Data Solutions (ADS), Bryan Engstrom, and Kelley Weed for injunctive relief, breach of contract, breach of fiduciary duty, misappropriation of trade secrets, tortious interference, conversion, and conspiracy based upon defendants Engstrom and Weed's ("Defendants") alleged theft of Plaintiff's confidential business information, trade secrets, and other proprietary data for the purposes of using such

information to undermine and compete with Plaintiff in violation of Engstrom's Non-compete agreement.

On June 1, 2011, Plaintiff voluntarily dismissed ADS after resolving its claims against them. Defendants Engstrom and Weed have failed to appear in this matter, and the Court Clerk entered default judgment against them on June 10, 2011. Plaintiff, however, never moved for default judgment, and this Court ordered Plaintiff to appear for a show cause hearing as to why the matter should not be dismissed for non-prosecution on September 16, 2011. Plaintiff responded on September 23, 2011, and requested additional time before filing a motion for default judgment. Plaintiff stated that it wanted to wait for the close of its third financial quarter at the end of September so that it could properly calculate its monetary damages. Plaintiff further stated that Defendants had approached it about a potential settlement, and that the parties have exchanged several settlement offers. However, Plaintiff advised the Court that part of the problem with settlement negotiations was that Defendants have failed to find gainful employment.

On October 14, 2011, Plaintiff filed the present Motion for Entry of Default Judgment. Defendants did not respond, and this Court ordered both parties to appear for a damages hearing, which the Court held on December 13, 2011. Defendants Engstrom and Weed received notice of this hearing, but they did not attend, nor were they represented by counsel. After hearing oral argument from Plaintiff's counsel, the Court ordered Plaintiff to provide the Court with additional information before ruling on its motion. The Court has had an opportunity to view this material, and this motion is ripe for decision.

## II. Factual Background

Plaintiff is a Colorado corporation, and defendant Engstrom was the former Worldwide Director of Sales for Plaintiff in Colorado. Defendant Weed is believed to be Engstrom's common law wife, and Plaintiff believes both reside in Williamsburg, Virginia. Plaintiff operates an optical data storage company and is the exclusive manufacturer of Plasmon optical hardware, which is used to store data. Plaintiff provides its hardware, services, and technical support to legal, health care, finance, and technology industries. Plaintiff conducts business worldwide and has over 1,000 customers.

Defendant Engstrom had access to Plaintiff's trade secrets, which comprise confidential and proprietary techniques and strategies for developing and implementing its hardware, Plasmon and other products, business proposals, pricing strategies, proprietary calculations, business and marketing plans, contract terms, financial information, quoting tools, cost information, design specifications for past, current, and future products, sales leads, sales customers, sources, vendors, computer programs/codes and processes, pending projects/proposals, employee and compensation information, customer names and preferences, marketing and research/development strategies, technical or scientific data, Plaintiff's Sales and Service Databases, a compilation of all of Plaintiff's service customers, customer contact information, contract conditions, specific product placement, terms, pricing, customer financial information, and start and end dates of customer service contracts.

In order for Plaintiff to maintain its trade secrets, it required Defendant Engstrom to sign Confidentiality and Non-compete agreements, both of which were missing from Engstrom's file when he left the company. These agreements, both of which are governed by Colorado law, obligated Engstrom to keep Plaintiff's trade secrets confidential. Plaintiff's Non-compete

agreement with Engstrom stated that following two (2) years after his employment with Plaintiff ended, Engstrom agreed not to compete directly or indirectly with Plaintiff within a fifty (50) mile radius of any market area serviced by Plaintiff.

On October 18, 2010, Engstrom resigned from the company stating he was unhappy with his employment environment. Before departing, however, Engstrom downloaded thousands of files of trade secrets. After associating with a new company, ADS, Engstrom engaged co-defendant Weed and ADS to use these trade secrets from November 2010 through February 2011 to solicit Plaintiff's customers before Plaintiff's contracts with these customers expired. Despite warnings from Plaintiff not to engage in this activity and to return trade secrets, Engstrom and Weed persisted in their conduct. Plaintiff filed the instant lawsuit as a result of Engstrom's actions.

### III. Applicable Law

Pursuant to Fed. R. Civ. P. 55(b)(2), where a default has been entered by the Clerk of Court, upon subsequent application, the Court may enter default judgment and award damages. When there is default, the Court may receive evidence of and/or review facts from the record to fix the amount which the plaintiff is entitled to recover and enter judgment. See Pope v. United States, 321 U.S. 1, 12 (1944). In this case, since the damages are un-liquidated, it was necessary for Plaintiff to present evidence in the form of affidavits, testimony, and other documentation to create a record for the Court's review of the appropriate damages to award. Although it is not necessary for the Court to hold a hearing to receive such evidence, the Court decided to hold a damages hearing in this matter in order to accord both Plaintiff and Defendants an opportunity to present material to the Court. See Trs. of the Operating Eng'rs Trust Fund v. Dominion Caisson

Corp., No DKC0-227,WL 1713999 *2 (D. Md. April 27, 2010) (holding the court may rely on "detailed affidavits or documentary evidence to determine the appropriate sum" of damages); see generally, Mut. Fed. Sav. & Loan Ass'n. v. Richards & Assocs., 872 F.2d (4th Cir. 1989). In addition to oral argument, Plaintiff has provided the Court with affidavits and other documents in support of its motion for default judgment and its claim for damages and injunctive relief. Defendants Engstrom and Weed have failed to make an appearance after adequate notice and did not provide the Court with any materials to review before reaching its judgment.

In this case, the Clerk first entered default as to Engstrom and Weed for failure to file an answer to the Complaint pursuant to Fed. R. Civ. P. 55(a) on June 10, 2011. On October 14, 2011, Plaintiff filed its Motion for Entry of Default Judgment as to Engstrom and Weed, and on October 31, 2011, the Clerk filed an Entry of Default as to Engstrom and Weed. Therefore, the Court grants Plaintiff's Motion for Default Judgment as outlined below.

### IV. Injunctive Relief

In its brief Plaintiff asks the Court to permanently enjoin Defendants from directly or indirectly, and whether alone or in concert with others: (1) from soliciting any business from any customer of Plaintiff whom Engstrom served or whose name became known to Defendants due to Engstrom's employment by Plaintiff (the "Clients"); (2) from using, disclosing or transmitting for any purpose, including initiating any contact with any of Plaintiff's Clients, the information contained in the records of Plaintiff, including, but not limited to, the names, addresses, contract terms, and financial information of the Clients; and (3) order that Defendants immediately return to Plaintiff, if they have not done so already, any documents, things or other tangible items that contain Plaintiff's Trade Secrets.

Despite the nature of Engstrom's actions in this case, the Court finds that Plaintiff is not entitled to a permanent injunction. The Court will, however, enforce the terms of the Confidentiality and Non-compete agreements Plaintiff and Engstrom signed. Therefore, according to the terms of these agreements, and as required by these agreements, the Court orders Engstrom to return all Confidential Information, Third-Party Information, and Trade Secret data still in his possession, including any documents, things, or other tangible items that contain Confidential Information, Third-Party Information, and Trade Secrets as defined by Plaintiff's Confidentiality Agreement (Exhibit B). Plaintiff has provided the Court with documentation demonstrating that Engstrom retrieved confidential customer client information for 9,992 active clients. Engstrom is ordered to immediately return all of this information to Plaintiff. Furthermore, in accordance with the Non-compete Agreement Engstrom signed, the Court hereby issues a temporary injunction prohibiting Engstrom from competing with Plaintiff within a fifty (50) mile radius of any market area serviced by Plaintiff. Since no evidence has been presented to indicate that Engstrom has ceased to continue activities in violation of his Non-compete Agreement, this injunction will last for two years from the date of entry of this Order.

## V. Compensatory Damages

Plaintiff claims it has lost $500,783.38 in lost business, lost time away from business, and a devaluation of its trade secrets and goodwill as a result of Defendants' misappropriation of trade secrets. Plaintiff breaks this down as follows:

1) Eleven (11) Clients Plaintiff lost to Kodak (for whom Engstrom became an approved vendor). Plaintiff states it is unlikely it will recover these clients. Total loss of $31,120.40 in revenue for the 2011 contract year.

2) Fifteen (15) Clients Plaintiff lost to ADS but who will return to Plaintiff as a result of Plaintiff's subsequent agreement with ADS. Total loss of $101,964.17 in revenue for the 2011 contract year.

3) Five (5) Clients Plaintiff did not lose to ADS. However, Plaintiff was required to reduce the prices it charged these clients in order to match the contract ADS had quoted them. Total loss of $3,251.92 in revenue for the 2011 contract year

4) Parts sales to five (5) Clients lost to ADS. Total loss of $71,546.00.

5) Two vehicles Engstrom converted for which he had received loans from Plaintiff but has failed to repay. Appraised value of $13,250.00.

6) Plaintiff's employees spent 532 hours working to preserve its client base. These were hours spent away from Plaintiff's core business. Since the hourly rate for these is employees is $32, Plaintiff alleges it lost time valued at $17,024.00.

7) Plaintiff claims its goodwill and reputation has been damaged, and that it will lose revenue equating to $262,627.47 from lost contracts for another three years. Plaintiff's comptroller calculated this amount by examining the nature of contracts lost or not renewed in 2011. He determined that Plaintiff would lose $87,542.49 each year for the next three years, 2012-2014.

After reviewing Plaintiffs claims, the Court declines to award Plaintiff damages for lost time away from business, and a devaluation of its trade secrets and goodwill as a result of Defendants' misappropriation of trade secrets. The actual revenue Plaintiff lost as a result of Defendants Engstrom and Weed's conduct amounts to $207,882.49. The Court has reviewed Plaintiff's profit/loss statements for 2010 and 2011. After examining Plaintiff's Gross Revenues and Income from Operations for these two years, the Court calculated the average profit Plaintiff

received for these two years based on its gross revenues. The Court calculated this average income from revenues to be 31.87%. Based on this percentage, the Court determines that the profit Plaintiff would have received from the lost revenue it has identified is $66,252.15. Therefore, the Court awards Plaintiff $66.252.15 in compensatory damages with regard to its lost revenue. Since Engstrom and Weed worked in concert together, the Court finds these Defendants jointly and severally liable for repayment of these compensatory damages.

In addition to lost revenue, Engstrom converted two vehicles for which Plaintiff had loaned him money to purchase. The loan amounts were $12,550.00 and $7,500.00. Plaintiff has provided the court with documentation showing that Engstrom has not paid off any part of these loans. Furthermore, Plaintiff indicated to the Court that Engstrom sold one of the vehicles in August 2010 and the other in August 2011. Plaintiff asserts that the appraised value of both of these vehicles amounts to $13,250.00. Since Engstrom has violated the terms of his Promissory Note, the Court orders him to pay Plaintiff $13,250.00 in compensatory damages for this breach of contract.

## VI. Treble Damages, Punitive Damages, Attorney's Fees and Costs

In addition to compensatory damages, Plaintiff also seeks trebling of damages according to Virginia's civil conspiracy statute, attorneys' fees and costs, and punitive damages. Because Plaintiff alleged, and Defendants defaulted on, Counts X and XVIII which allege statutory conspiracy pursuant to Va. Code § 18.2-499 et seq., Plaintiff claims it is entitled to treble damages, and attorney's fees and costs under Virginia law for a total amount of $1,502,351.19 in compensatory damages.

The elements of statutory conspiracy under Virginia law are (1) concerted action; (2) legal malice; and (3) causally-related injury. Virginia Vermiculite, Ltd. V. W.R. Grace & Co.-

8

Conn., 144 F. Supp. 2d 558 (W.D. Va. 2001). Plaintiff has met its burden of establishing each of these elements. With regard to elements one and three, Plaintiff has clearly demonstrated that Engstrom and Weed worked together and used Plaintiff's confidential information and trade secrets to solicit Plaintiff's clients in violation of the Non-compete and Confidentiality agreements Engstrom signed. Plaintiff has also demonstrated that Engstrom and Weed successfully competed with Plaintiff and took business away from Plaintiff, which resulted in lost profit and injury to Plaintiff.

The second element of legal malice requires the plaintiff to prove that a defendant acted intentionally, purposefully, and without legal justification in order to injure the plaintiff. Id.; see also Atlas Partners II v. Brumberg, Mackey & Wall, PLC, 2006 U.S. Dist. LEXIS 983 (W.D. Va. Jan. 6, 2006). The statute does not require a showing of actual malice, merely legal malice. Commercial Bus. Sys. v. Bellsouth Servs., Inc., 249 Va. 39 (1995) Therefore, the statute does not require a plaintiff to prove that a conspirator's primary and overriding purpose is to injure another in his trade or business. Advanced Marine Enters., Inc. v. PRC, Inc., 256 Va. 106 (1998). Furthermore, the statute only requires that one party act with legal malice. Virginia Vermiculite, 144 F. Supp. 2d 558.

The evidence presented by Plaintiff in this matter demonstrates that Engstrom acted with legal malice. Engstrom clearly stole confidential information and trade secrets, and he clearly violated his Non-compete and Confidentiality agreements by soliciting Plaintiff's clients through Weed and ADS and by helping Weed and ADS secure contracts with Plaintiff's clients. These actions were intentional, purposeful, and without lawful justification, and this conduct resulted in the loss of over forty customers and monetary damages to Plaintiff. The facts of this case are very similar to a case in which a Virginia Circuit Court upheld treble damages. In James, Ltd. V.

Saks Fifth Ave., Inc., 67 Va. Cir. 126 (Arlington County Mar. 8, 2005), rev'd in part on other grounds, 272 Va. 177 (2006), when a former employee left his employer, he took his employer's clientele list with him to his new employer despite the fact that he knew a restrictive covenant in his old contract prohibited employment with a competitor within one mile for a period of three years. The court found that this covenant was not overly harsh or oppressive and found that this type of intentional conduct without lawful justification could rise to the level of legal malice. In this case Plaintiff has shown that Engstrom was aware of his Confidentiality and Non-compete agreements. Engstrom intentionally stole Plaintiff's confidential client information and trade secrets and, with the help of others, used this data to solicit and compete with Plaintiff. As a result, Plaintiff's business was injured. Therefore, Plaintiff is entitled to treble compensatory damages under Virginia law. The Court determined Plaintiff's compensatory damages to be $66,252.15. This amount trebled is $198,756.45. Thus, Defendants Engstrom and Weed are jointly and severally liable for $198,756.45 in compensatory damages to Plaintiff for their civil conspiracy.

Additionally, Va. Code §§ 18.2-499 and 18.2-500 authorizes Plaintiff to recover the costs of the suit, which includes a reasonable fee to Plaintiff's counsel. Patricia McCullagh has been the lead attorney in this matter for Plaintiff and has billed 92.2 hours. She charges $320/hour. Four other attorneys and two paralegals are listed as also performing work in this matter for various rates and hours. In total, Plaintiff's lawyers have worked 181.60 hours and claim they have rendered services in the total amount of $53,486.62. These fees and costs appear reasonable to the Court, and the Court therefore awards Plaintiff its attorneys' fees and costs in the amount of $53,486.62 jointly and severally against Engstrom and Weed.

Finally, the Court addresses Plaintiff's motion for punitive damages. Plaintiff contends it is entitled to punitive damages against Defendants Engstrom and Weed in the amount of $350,000 each for a total of $700,000 pursuant to Counts III (breach of fiduciary duty), Counts IV and XIII (misappropriation of trade secrets), Counts VI, XIV, XV (tortious interference), Counts VIII and XVI (conversion), Counts X and XVIII (statutory conspiracy), Counts XI and XIX (common law conspiracy) and Count XII (aiding and abetting breach of fiduciary duty) of the Complaint. In order to receive punitive damages, Plaintiff must demonstrate that Defendants acted with actual malice, or under circumstances amounting to a willful and wanton disregard of Plaintiff's rights. See Woods v. Mendez, 265 Va. 68, 76 (2003). Actual malice is defined as a sinister or corrupt motive such as hatred, spite, ill will, or desire to injure the plaintiff. See Peacock Buick, Inc. v. Durkin, 221 Va. 1133, 1137 (1981). This standard requires a different showing than that for legal malice. Although the Court found that Defendants' actions constituted legal malice, Plaintiff has not borne its burden of demonstrating that either Engstrom or Weed acted with a sinister or corrupt motive such as hatred, spite, ill will, or a desire to injure Plaintiff. Rather, Engstrom and Weed appear to have been motivated by a desire to make money. Therefore, the Court denies Plaintiff's motion for punitive damages.

## VII.  Conclusion

In its Motion for Default Judgment, Plaintiff states that it is critical for its protection that its current and former employees abide by their employment obligations and not be allowed to breach their employment obligations and tortuously interfere with Plaintiff's business. Although the Court recognizes the importance of this deterrence interest, Plaintiff has also stated that Defendants Engstrom and Weed have not found gainful employment. Therefore, the Court is not willing to enter a judgment against Defendants that is so punitive in nature that it prohibits them

from actually complying with the judgment. The Court finds that this judgment accords with the interests of justice.

For these reasons, and those set forth above, the Court hereby **GRANTS** Plaintiff's Motion for Default Judgment. The Court **ORDERS** Defendant Bryan Engstrom to return all Confidential Information, Third-Party Information, and Trade Secret data still in his possession, including any documents, things, or other tangible items that contain Confidential Information, Third-Party Information, and Trade Secrets as defined by Plaintiff's Confidentiality Agreement. Defendant Engstrom is also hereby **ENJOINED** from competing with Plaintiff within a fifty (50) mile radius of any market area serviced by Plaintiff for two years from the date of entry of this Order. The Court **AWARDS** Plaintiff $198,756.45 in compensatory damages and $53,486.62 in attorneys' fees and cost, for a total of $252,243.07, jointly and severally against both Defendants Bryan Engstrom and Kelley Weed. Furthermore, the Court **AWARDS** Plaintiff $13,250.00 in compensatory damages against Defendant Bryan Engstrom for the automobile loans he has not repaid. Finally, the Court **DENIES** Plaintiff's motion for punitive damages.

The Clerk is **DIRECTED** to send a copy of this Order to all Counsel and Parties of Record.

**IT IS SO ORDERED.**

Newport News, Virginia
May 3, 2012

/s/
Robert G. Doumar
Senior United States District Judge